# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

     v.                                                                       No. 17-CR-1723-WJ

ETHAN GUILLEN,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S SECOND MOTION TO RECONSIDER
## COURT'S DENIAL OF MOTION TO SUPPRESS

THIS MATTER comes before the Court upon Defendant's Second Opposed Motion for Reconsideration of Interlocutory Order Denying Motion to Suppress Statements and Evidence, filed January 10, 2019 **(Doc. 93)**. Having reviewed the parties' pleadings and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

## BACKGROUND

Defendant ("Ethan") is charged with one count in violation of 26 U.S.C. § 5861(d), and one count in violation of 18 U.S.C. §844(i), in connection with making an explosive device and placing it under his former girlfriend's bed. Fortunately, the device did not detonate.

On May 3, 2018, following a lengthy three-day hearing, the Court denied Defendant's motion to suppress self-incriminating statements made to law enforcement and evidence which was found subsequent to a search. Doc. 68. In its decision, the Court determined that after repeated viewings, the audio/visual lapel camera ("bodycam") footage recorded before and during law enforcement agents' entry into the Guillen residence indicated that Defendant gave express permission for the agents to enter the residence, ". . . both orally and by his actions in

stepping aside . . . consistent with the agents' testimony." Doc. 68 at 8.

Defendant then sought reconsideration of the Court's findings regarding whether law enforcement's entry into the Guillen residence violated Defendant's Fourth Amendment rights, seeking to supplement the record with a "forensic audibility analysis" of the bodycam footage which was introduced at the hearing on Defendant's motion to suppress. Doc. 69.  Defendant explained that he sought clarification as to whether it was Defendant or his brother Tyler Guillen who spoke the word "Sure" in inviting agents into the Guillen home. Doc. 69 at 1-4.  The Court denied this first motion for reconsideration, reiterating that:

> . . . after repeated viewings, it appears that Ethan said "Sure" to the agents'
> second request to come inside, taking a step back while Tyler stepped off to the
> side in order to allow the agents to come in.

Doc. 72 at 2.  The Court also noted that because it was undisputed that Tyler consented to the agents' entry, nothing would be gained by enhancing the video recording because ". . . Tyler had authority to allow law enforcement into the home and there was no evidence that Ethan objected. *Id.*

Defendant now returns to Court with a Second Motion for Reconsideration, this time armed with an "enhanced" version of the same bodycam footage taken from Detective Larranaga's lapel camera showing the agents' entry into the Guillen home; and a forensic report by Mr. Michel outlining the methods and procedures used to create the enhanced material.

## DISCUSSION

Defendant submits two supplemental exhibits with this motion:

- Exhibit A is an "enhanced version of about 60 seconds of the bodycam footage that was part of the Government's Exhibit 1, Part 2. Doc. 94.

- Defendant also submits a "Forensic Examination Report" from Joshua Michel, who Defendant describes as a forensic audio analyst employed by Roloff Digital Forensics. Doc. 96-1.  In the report, Mr. Michel describes how he amplified the audio, reduced

ambient noise, and transcribed the first approximately 61 seconds of audio. After he "clarified" the audio, Mr. Michel transcribed the conversation and concluded that it was Defendant's brother rather than Defendant who said "Sure" to the agents' request to enter the house and talk. Doc. 96-1 at 5.

Defendant hopes that this "enhanced verbal exchange" will persuade the Court to modify its findings concerning (1) the legal sufficiency of Ethan's purported consent to the agents' entry into the residence; and (2) which brother—Ethan or Tyler Guillen—gave his consent to the agents' initial entry.

## I. Relevant Law

Grounds warranting motion to reconsider include: (1) intervening change in controlling law; (2) new evidence previously unavailable; and (3) need to correct clear error or prevent manifest injustice. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000); *see United States v. Luger*, 837 F.3d 870, 875–76 (8th Cir. 2016) (noting that the civil standard applies to motions for reconsideration raised in criminal cases outside of the suppression context. *See United States v. Rollins*, 607 F.3d 500, 502 (7th Cir.2010) (citing *United States v. Healy*, 376 U.S. 75 (1964). Defendant contends that the enhanced footage constitutes "new evidence" for reconsideration, and that the Court has misapprehended the facts—that is, whether Defendant or his brother Tyler said "Sure" to the agents at the door to the Guillen residence.

The Government opposes Defendant's motion because:

(1) Neither admissible expert opinion under Fed.R.Evid. 702 or proper lay testimony under Rule 701;

(2) The enhanced new audio is not "new evidence" justifying reconsideration; and

(3) The enhanced audio is irrelevant, given that neither Defendant or his brother Tyler objected to the search.

However, as explained below, the only pertinent grounds are the last two.

## I. Expert /Lay Witness Issues

The Government contends that Mr. Michel's report is not admissible either as expert or lay testimony. Defendant claims that he is attaching Mr. Michel's report so as to permit the Government to challenge it at an evidentiary hearing.

To be relevant, proposed expert testimony must logically advance a material aspect of the case," *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 n. 2 (10th Cir. 2005), and be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591(1993). (quotation omitted). In assessing whether testimony will assist the trier of fact, district courts consider several factors, including whether the testimony "is within the juror's common knowledge and experience," and "whether it will usurp the juror's role of evaluating a witness's credibility." *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006) (footnote omitted). The Tenth Circuit has explained that the ultimate "touchstone of admissibility" is whether the jury is "capable of resolving the issues in this case without expert testimony." *N. American Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1112 (10th Cir. 2009). Pursuant to Rule 702, courts must conduct a "common-sense inquiry" into whether a juror would be able to understand certain evidence without specialized knowledge. *United States v. Becker*, 230 F.3d 1224, 1231 (10th Cir.2000).

The Government takes issue with Mr. Michel's qualifications as well as the reliability and relevance of his opinion. The Court need not engage in a *Daubert* analysis for purposes of this motion, because the Government prevails on the other grounds presented to deny the motion. However, the Government has raised some doubts regarding the reliability and relevance of Mr. Michel's report, as well as his qualifications:

- *Regarding Mr. Michel's qualifications:* Mr. Michel describes himself as a Senior Digital Forensic Examiner, but does not reference any expertise whatsoever with respect to voice recognition—and yet, that is exactly what he purports to practice here after transcribing what he himself has heard on the enhanced footage.

- *Regarding the reliability of the report:* Mr. Michel's report informs the reader that Mr. Michel amplified the audio, reduced ambient noise, and transcribed the first approximately 61 seconds of audio. After he "clarified" the audio, he transcribed the conversation and concluded that it was Defendant's brother Tyler rather than Defendant who said "Sure" to the agents' request to enter the house and talk. Doc. 96-1 at 5. The report does not set forth any scientifically recognized characteristics that may distinguish Defendant's voice from that of his brother which would go a long way toward explaining his conclusion.

- *Regarding relevance:* Mr. Michel's opinion is based on what he himself believed he heard when he listened to the enhanced recording. This conclusion could be made just as easily by a non-expert because it is predicated on an area of common knowledge and experience—in this instance, simply watching a video, and thus provides no assistance to this Court. *See U.S. v. Smith,* 156 F.3d 1046, 1054 (10th Cir. 1998) (finding that expert testimony on eyewitness testimony touched on "areas of common knowledge" and concluding that the testimony would not assist the trier of fact).

- *Testimony on Ultimate Issue:* By announcing his opinion as to who said "Sure" on the footage, Mr. Michel has usurped the Court's fact-finding duty. Although expert witnesses may testify about an ultimate issue, they may not draw a conclusion for the fact finder. *See* Fed.R.Evid. 704(An expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment). *United States v. Simpson*, 7 F.3d 186, 188–89 (10th Cir.1993). Mr. Michel did not limit his opinion to explaining how he enhanced the bodycam footage or how scientifically one can compare and identify voices; instead, goes further and informs the reader which individual said "Sure," without any science-based explanation for how he arrived at that conclusion (other than that is what *he* heard). Mr. Michel's conclusion does not assist the Court, since the undersigned is perfectly capable of watching the enhanced footage to determine who is saying what.[1]

Even assuming Mr. Michel's methodology is reliable, the Court would have concerns regarding the admissibility of Mr. Michel's report. However, there is no need to engage in a full-blown *Daubert* inquiry at this point because the Government's other two arguments are dispositive.

---

[1] As the Government points out, Mr. Michel's transcription on Doc. 96-1 at 4-5 would be afforded little weight as compared to a recorded conversation. Where a recorded conversation is admitted into evidence during a jury trial along with a transcript of the recording, the jury would be instructed that the recording is proper evidence but the transcript is not evidence. Jurors would be further instructed that if they notice differences between what they hear on the recording and what they read in the transcript, they are to rely on what they heard not what they read. Tenth Circuit Criminal Pattern Jury Instruction 1.40 (2011 Ed., updated February 2018). In this instance, the Court can come to its own conclusions and need not rely on Mr. Michel's interpretation of what *he* heard after viewing the bodycam footage.

## II.     "New Evidence"

Defendant argues that the enhanced audio clarifies who consented to the police officer's entry into the house in the lapel video, but there really is nothing new here at all. The original bodycam footage was introduced into evidence at the suppression hearing, and was played repeatedly during the hearing. The original bodycam footage was audible then and intelligible then, just as it is now in the enhanced version. *See United States v. Watson*, 594 F.2d 1330, 1335-1336 (10th Cir. 1979) (affirming the trial court's discretionary determination that voice recordings were intelligible).

Defendant claims that if the enhanced footage is not "new" evidence, it is sufficiently analogous to new evidence so as to provide a perspective that the Court did not have an opportunity to consider at the time of the hearing. After reviewing the "enhanced" version of the footage several times, the Court finds that it does not offer any new "perspective" at all. In the end, the final arbiter is what the eyes see and the ears hear, and not any methodology Mr. Michel may have relied on.

The enhanced footage produced by Mr. Michel still shows Defendant consenting to the agents' entry into his home by saying "Sure" and then stepping aside to allow the agents to enter. The back of one of the agents blocks Defendant's full visage, but it is still possible to discern which individual said "Sure." There is enough time on the footage to become accustomed to the two voices, and the pitch in Ethan's voice is lower than his brother Tyler's. There is also some movement visible on Ethan's face that is synchronous with the word "Sure." The Court agrees with the Government that the enhanced audio solidifies the fact that Defendant personally gave consent to the search. Further, neither the original footage nor the enhanced footage shows any retraction of consent by either Ethan or Tyler.

Accordingly, the Court finds that the enhanced footage is not "new evidence" and even if the Court assumes that it is, the enhanced video bolsters the Court's previous findings and so does not support Plaintiff's claim that the Court misapprehended the facts related to its rulings on Defendant's motion to suppress. *See United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (failure to object "may be considered an indication that the search was within the scope of the consent").

## III. Irrelevance of Defendant's Supplemental Exhibits

The Government offers yet another basis for denying Defendant's motion to reconsider: whether Ethan or his brother Tyler said "Sure" is not dispositive because neither of them objected to the agents' entry and search. As the Court noted in its denial of Defendant's motion to suppress:

> The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained. *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *U.S. v. Cruz-Mendez*, 467 F.3d 1260, 1265 (10th Cir. 2006) (district court did not err finding that entry was lawful where girlfriend gave consent to enter and invited officers inside after she retrieved identification)

Doc. 68 at 8. The Court found that while Ethan initially refused entry to law enforcement (although Tyler initially consented), after a brief exchange with his brother, Ethan said "Sure" and stepped aside. The agents remained on the front porch and did not attempt entry into the house until they asked again whether they were being invited in and were answered in the affirmative. There were no further objections by Defendant. The Court stands by its previous finding that Defendant consented to the entry and that his lack of objection to the officers' entry into and search of his home indicated consent. *See* Doc. 68, pp. 8-9. *See United States v. McKerrell,* 491 F.3d 1221, 1227 (10th Cir. 2007) (an occupant who does not wish the search to

occur must expressly object in order to nullify a co-tenant's express consent).

## CONCLUSION

The Court's rulings regarding lawful entry took into account testimony presented at the hearing. The Court previously found that the testimony of Special Agents Rominger and Green to be credible. Neither agent "had any doubt that Ethan as well as his brother Tyler gave consent for the entry. Doc. 68 at 7. Detective Larranaga "stated that he could not see which brother's lips were moving to say "Sure," but it sounded to him as though Ethan made that statement." *Id.* In addition to this testimony, the Court viewed the original footage a number of times and made initial findings that were consistent with its credibility findings.

The Court has now also viewed the enhanced footage prepared by Mr. Michel as many times, and finds no reason grounded in law or fact to modify its previous rulings underlying its denial of Defendant's motion to suppress.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Second Opposed Motion for Reconsideration of Interlocutory Order Denying Motion to Suppress Statements and Evidence **(Doc. 93)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE