# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                               No. 1:17-CR-1723 WJ

ETHAN GUILLEN,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' REQUEST FOR UPWARD VARIANCE

THIS MATTER IS BEFORE THE COURT on Defendant Ethan Guillen's Sentencing Memorandum (**Doc. 140**) and the United States of America's response thereto (**Doc. 144**). Defendant seeks a downward departure or variance to a sentence of 63 to 78 months imprisonment, while the Government seeks an upward departure/variance. Having considered all the factual and legal matters presented in the record before this Court, as well as the arguments presented at the sentencing hearing on December 18, 2019, this Court has determined that an upward variance from the Sentencing Guidelines is justified, albeit not to the extent argued by the Government. Therefore, as the Court stated on the record at the time sentence was pronounced,[1] the Court finds and concludes that in accordance with 18 U.S.C. § 3553(a), a sentence of 150 months incarceration is a sentence that is sufficient but not greater than necessary to satisfy the goals of sentencing. Accordingly, Defendant is committed to the custody of the Federal Bureau of Prisons for a term of 120 months as to Count 1 and 150 months as to Count 2, to run concurrently, for a total of 150 months imprisonment.

---

[1] The sentencing hearing transcript, Doc. 149, is incorporated by reference.

# BACKGROUND

Defendant was charged with possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d) and malicious attempt to damage or destroy by means of fire or an explosive in violation of 18 U.S.C. § 844(i) after planting a homemade pressure cooker bomb underneath the bed of his former girlfriend while she and her family were attending her high school graduation. The device was fashioned from a pressure cooker and contained nuts and bolts as well as improvised "black powder" and homemade napalm with a fuse created from a firework. The device was plugged into a timer, intended to go off at 1:30 a.m. Defendant admitted that after planting the device, he went home and listened to his police scanner for news that the device had detonated.

Fortunately, the device never detonated and was discovered by the intended victim. The device had been in the young woman's home, an apartment in a multi-unit complex, for two weeks by the time it was discovered. The device was underneath the victim's bed, plugged into a wall outlet. The items which had been plugged into that outlet had been plugged into an extension cord by Defendant in order to prevent the victim's suspicions from being raised.

Defendant was identified as a suspect very early on, due to the fact that after the victim ended their relationship Defendant continued to harass her, to the point that the victim had to be escorted to her high school classes. During their investigation, law enforcement found evidence that Defendant had tested the various components of the device. Defendant admitted to investigators that he had built and placed the device underneath the victim's bed. Defendant further admitted that he had been planning the attack for over a year and had conducted online research about how to assemble a pressure-cooker bomb and the various components.

Defendant initially pleaded guilty to the two-count Indictment without the benefit of a plea agreement. (Doc. 142 at 1.) He later withdrew his guilty plea in lieu of a conditional plea agreement wherein the Government agreed to recommend a sentence no greater than 20 years imprisonment. (*Id.*) The Pre-Sentence Report ("PSR") prepared by United States Probation determined Defendant's base offense level to be 33 and set Defendant's criminal history category at I. (Doc. 124 at 10–11.) After a reduction for acceptance of responsibility, based on a total offense level of 30, the PSR set forth an advisory guideline sentencing range of 97 to 121 months. (*Id.* at 14.) Neither Defendant nor the Government disputes the sentencing guideline calculation. At sentencing the Government argued for the statutory maximum sentence of 20 years imprisonment, the statutory maximum, while Defendant argued that his relative youth, lack of criminal history, autism spectrum disorder, and mental health struggles including severe depression weighed in favor of a downward variance.

## LEGAL STANDARD

After *United States v. Booker*, 543 U.S. 220 (2005), district courts are no longer required to sentence defendants within the prescribed Guidelines range. However, a district judge must still begin all sentencing proceedings by correctly calculating the applicable Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). "Accordingly, although the 'Guidelines should be the starting point and the initial benchmark,' district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in [18 U.S.C.] § 3553(a), subject to appellate review for 'reasonableness.'" *Pepper v. United States*, 562 U.S. 476, 490 (2011) (quoting *Gall*, 552 U.S. at 49–51) (alteration added).

Any sentence the district court chooses to impose—whether it is within the Guidelines range or not—must comport with the goals of sentencing as set forth in 18 U.S.C. § 3553(a). An

appropriate sentence will: (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) afford adequate deterrence for criminal conduct; (c) protect the public from further crimes of the defendant; and (d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). Furthermore, in determining whether a Guidelines sentence adequately serves these goals, the court should consider the following factors: "(1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, . . . (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution." *Rita v. United States*, 551 U.S. 338 347–48 (2007) (quoting 18 U.S.C. § 3553(a)(1–7)). Finally, in all cases, the court must impose a sentence sufficient, but not greater than necessary to comply with the goals of sentencing. 18 U.S.C. § 3553(a).

"[W]e stress that sentencing courts 'should engage in a holistic inquiry of the § 3553(a) factors.'" *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014) (quoting *Lopez–Macias*, 661 F.3d at 492). "A district court must consider the extent of the deviation [from the Guidelines] and ensure that the justification is sufficiently compelling to support the degree of the variance. A major variance should have a more significant justification than a minor one. Nevertheless, the Court has rejected an appellate rule that requires extraordinary circumstances to justify a sentence outside the Guidelines range and the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Lente*, 759 F.3d at 1158 (internal citation and quotation marks omitted) (alternation in original).

"[I]t [is] quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence. Moreover, [the Tenth Circuit] does not demand that the district court recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider." *United States v. Rines*, 419 F.3d 1104, 1107 (10th Cir. 2005) (quoting *United States v. Contreras–Martinez*, 409 F.3d 1236, 1242 (10th Cir. 2005)) (alteration in original).

## DISCUSSION

After careful review of the record and the arguments at sentencing, the Court is convinced that, considering the nature and circumstances of the offense, *see* 18 U.S.C. § 3553(a), an upward variance is warranted to reflect the seriousness of the conduct in this case. Defendant carefully researched not only how to build the bomb itself, but also how to make it as deadly and destructive as possible. He went to multiple stores and, using cash, purchased those components. He used household chemicals to create black powder and homemade napalm. He took every-day items from his garage, nuts and bolts and the like, to create shrapnel. He planned and plotted, by his own admission, for over a year, even seeking advice and how-to help from online "friends." He tested his homemade components to ensure they worked. The level and extent of Defendant's preparation and premeditation is not only disturbing, but also shows a high degree of sophistication and deliberateness beyond Defendant's years. The device was neither primitive nor rudimentary, and had it worked as intended, the injuries inflicted, up to and including loss of life, would have been horrific. The injured would have likely included not only the intended victim but numerous others in her apartment and in surrounding units. Such conduct indicates a cold and utter disregard for human life.

Not only is the nature of the device in-of-itself is shocking, Defendant's conduct in placing and concealing the device also strike this Court as grounds for an upward variance. Defendant surreptitiously entered the victim's home after observing the family leave, knowing they would be attending the victim's high school graduation. He concealed the device under the victim's bed, going so far as to bring his own extension cord so that he would not have to unplug anything in the room and potentially alert the victim that something was amiss. He set a timer for 1:30 a.m. to ensure the victim would be in her room when the device exploded. He then went home and listened to a police scanner, anticipating word that his sinister plot had succeeded.[2]

## CONCLUSION

There is no doubt in the Court's mind that Defendant intended to kill the victim, and but for the faulty fuse, would probably have succeed if the victim had been in her bedroom and the bomb had detonated. The extent of Defendant's premeditation and the level of planning and research are offense characteristics which warrant an upward variance. So too are Defendant's deliberate and intentional actions in not only placing the bomb in the victim's apartment, but in testing the components ahead of time and in taking such care to conceal the device's discovery. The Court agrees with Defendant that punishment should be framed from the standpoint of what happened, not what could have happened. But what happened here is precisely why, for all the reasons set forth above and for the reasons verbally articulated by the Court when pronouncing sentence, the Court finds and concludes that a sentence which is sufficient, but not greater than necessary to meet the goals of sentencing, is a total of 150 months imprisonment.

---

[2] At sentencing, Defendant argued, unpersuasively, that he knew the device would fail because some of the fuse components were fire-retardant. However, Defendant's own admission that after planting the device he went home and listened to his police scanner to wait for news that the device had worked is irreconcilable with his assertion at sentencing. Moreover, Defendant's intentional concealment of the device belies the notion that it was merely intended to shock or scare the victim. The Court does not believe, on balance of all the evidence before it, that the failure of the device was at all intentional. As far as Defendant knew and, in point of fact, hoped, his crime was completed when he left the device plugged into a timer beneath the victim's bed.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE